IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EUGENE FORD,<br><br>    Plaintiff,<br><br>v.<br><br>R.J. REYNOLDS TOBACCO COMPANY, a foreign corporation, as successor-by-merger to Lorillard Tobacco Company, individually and as successor-in-interest to the U.S. tobacco business of Brown & Williamson Tobacco Corporation (n/k/a Brown & Williamson Holdings Inc.) and individually as successor-by-merger to American Tobacco Company,<br><br>and<br><br>SCHNUCK MARKETS, INC., a domestic corporation,<br><br>    Defendants. | **JURY TRIAL DEMANDED**<br><br><br>Case No. 4:20-cv-1551 |

**NOTICE OF REMOVAL BY DEFENDANT
R.J. REYNOLDS TOBACCO COMPANY**

R.J. Reynolds Tobacco Company ("Reynolds" or the "Manufacturer Defendant") files this notice of removal from the 22nd Judicial Circuit Court for the City of St. Louis, Missouri, to the United States District Court for the Eastern District of Missouri, Eastern Division, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.[1]  Removal is appropriate under 28 U.S.C. § 1441(b) because this Court has original jurisdiction over this diversity action pursuant to 28 U.S.C. § 1332.  In support of this Notice of Removal, Reynolds states as follows:

---

[1] By removing this action, Reynolds does not waive any available defenses, including those under Rule 12 of the Federal Rules of Civil Procedure.  Nothing in this Notice of Removal should be construed as a waiver or relinquishment of any available defense.

9967582.2

I.  **NATURE OF THE CASE**

1. On September 19, 2020, Plaintiff filed a Petition in 22nd Judicial Circuit Court for the City of St. Louis, Missouri, captioned *Eugene Ford v. R.J. Reynolds Tobacco Company., et al.*, No. 2022-CC09874 (Mo. Cir. Ct. September 19, 2020) (**Ex. A**).

2. Plaintiff alleges that he developed squamous cell lung cancer as the result of smoking cigarettes manufactured by Reynolds. *See, e.g.*, Pet. ¶¶ 3-6, 42, 74, 81, 90, 99, 110. In his Petition, Plaintiff asserts four claims against Reynolds: (i) strict liability—design defect; (ii) negligent design; (iii) fraudulent concealment; and (iv) "concealment fraud conspiracy." *Id.* ¶¶ 83-120.

3. Plaintiff alleges that when he lived in Missouri, he purchased cigarettes manufactured by Reynolds from various retailers, including Schnucks Markets, Inc. ("Schnucks" or the "Retailer Defendant"). *Id.* ¶¶ 7, 75, 123-125. Plaintiff asserts a single claim for strict liability—design defect (Count V) against Schnucks for "plac[ing] into the stream of commerce for sale, including those that Ford purchased and smoked, [cigarettes that] were in an unreasonably dangerous defective condition when put to a reasonably anticipated use." *Id.* ¶ 124. In support of his claim against Schnucks, Plaintiff specifically pleads that the cigarettes he purchased from Schnucks were not modified in any way after they left the Manufacturer Defendant's control:

> ***There were no material alterations or modifications of cigarettes manufactured by RJR and B & W between the time of their manufacture and the time in which they were subsequently distributed to various retail outlets*** throughout the St. Louis area, including Schnucks, when they were sold through the stream of commerce, to, among others, Ford, who smoked them.

*Id.* ¶ 123 (emphasis added). Thus, Plaintiff's claim against Schnucks is predicated solely on its status as a seller "plac[ing] into the stream of commerce for sale, include those that Ford purchased and smoked, [cigarettes that] were in an unreasonably dangerous defective condition when put to

2

a reasonably anticipated use." *Id.* ¶ 124.

II. **NOTICE OF REMOVAL IS TIMELY**

4. Plaintiff filed his Petition on September 19, 2020.

5. Reynolds was served with the Petition on September 29, 2020.

6. Schnucks was served with the Petition on October 5, 2020.

7. Federal law requires that "[t]he notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading."  28 U.S.C. § 1446(b).

8. Reynolds files this Notice of Removal within 30 days of service of Plaintiff's Petition.  This Notice of Removal therefore is timely.

III. **REMOVAL IS PROPER**

9. The Court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1332, and 28 U.S.C. §§ 1441 and 1446 permit removal of this case to federal district court.

10. The amount in controversy exceeds $75,000, exclusive of interest and costs.

11. This action involves a controversy between citizens of different states.  Plaintiff is a citizen of Missouri, and the *properly joined* defendant (Reynolds) is a citizen of North Carolina.

A. **The Amount in Controversy Requirement is Satisfied.**

12. The amount in controversy exceeds $75,000, exclusive of interest and costs.  In determining the amount in controversy, the removing party need only show that "a fact-finder *might* legally conclude" that the damages are greater than the required amount.  *James Neff Krampfer Family Farm v. IBP, Inc.*, 393 F.3d 828, 833 (8th Cir. 2005) (emphasis in original) (citing *Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2002)).  The amount in controversy includes punitive damages.  *See, e.g.*, *State of Mo. ex rel. Pemiscot County v. Western Sur. Co.*, 51 F.3d 170, 173-74 (8th Cir. 1995); *Larkin v. Brown*, 41 F.3d 387, 388-89 (8th Cir. 1994).

13.     Here, Plaintiff seeks compensatory and punitive damages.² *See* "WHEREFORE" paragraphs following Pet. ¶ 91 (Count I) ("WHEREFORE, Plaintiff, Eugene Ford, prays for a fair and reasonable judgment against Defendant RJR, in excess of $25,000.00, including punitive damages, in a sum that will punish Defendant RJR and deter it and others from like conduct, together with his costs and for such other and further orders as the Court may deem proper under the circumstances.") **(Ex. A)**; *see also id.* "WHEREFORE" paragraphs following ¶¶ 100, 112, 120, 125 (seeking in excess of $25,000, including punitive damages, for each of Counts II through V).³

14.     Plaintiff alleges that he developed squamous cell lung cancer as the result of smoking cigarettes. *See*, *e.g.*, *id.* ¶¶ 3-5, 42, 81, 90, 99. Plaintiff further alleges that he "suffered serious bodily injury, on-going pain throughout his body, coughing and breathing problems, loss of enjoyment of life and disability . . . and will likely endure permanent pain and disability" as a result of these conditions. *Id.* ¶ 82.

15.     Federal district courts in the Eighth Circuit have readily found that the amount-in-controversy requirement is satisfied if a plaintiff alleges serious bodily injuries and/or chronic or permanent medical conditions. *See, e.g.*, *Allmon v. Walgreens Co.*, No. 4:09 CV 1151 DDN, 2010 WL 1292172, at *1 (E.D. Mo. Apr. 5, 2010) (finding amount-in-controversy requirement satisfied because plaintiff alleged "extreme weight loss, stunted growth, menstrual problems, ovarian cysts, and diabetes"); *Quinn v. Kimble*, 228 F. Supp. 2d 1038, 1041 (E.D. Mo. 2002) (concluding that a

---

² Under Missouri law effective for all claims filed on or after August 28, 2020, "[n]o initial pleading in a civil action shall contain a claim for a punitive damage award. Any later pleading containing a claim for a punitive damage award may be filed only with leave of the court." Mo. Rev. Stat. §§ 510.261-.262. Therefore, Plaintiff's claim for punitive damages is improper, but Plaintiff's request for punitive damages in his initial pleading clearly shows his intent to seek punitive damages in this case.

³ Under Missouri law, Plaintiff must allege more than $25,000 damages in order to file a case in the Circuit Court. *See* Mo. Rev. Stat. §§ 517.081, 517.011(1).

4

jury could award more than $75,000 "given that plaintiffs suffered head, neck, and back injuries; incurred medical expenses and will incur further such expenses; have permanent, progressive, and disabling injuries").

16. Further, in two of the most recent smoking-and-health cases tried in Missouri, the juries awarded well over $75,000 in damages. In *Smith v. Brown & Williamson Tobacco Corporation*, the Missouri Court of Appeals upheld an award of $2 million in compensatory damages and reversed a punitive damages award of $20 million. 275 S.W.3d 748, 823-24 (Mo. Ct. App. 2008), *aff'd*, 410 S.W.3d 623, 628 (Mo. 2013) (upholding an award of $1.5 million in punitive damages after a new punitive damages trial). In *Thompson v. Brown & Williamson Tobacco Corporation,* the Missouri Court of Appeals upheld an award of $1 million in compensatory damages. 207 S.W.3d 76, 128 (Mo. Ct. App. 2006). Although these cases involved wrongful death claims, the verdicts are nonetheless representative of the amounts of damages that plaintiffs have sought—and have been awarded—in smoking-and-health cases against cigarette manufacturers in Missouri.

17. Reynolds maintains that Plaintiff is not entitled to any recovery in this matter. However, in light of the allegations in the Petition, Plaintiff undisputedly seeks to recover damages in excess of the jurisdictional limit. Accordingly, the amount-in-controversy requirement is satisfied.

**B.     The Diversity of Citizenship Requirement is Satisfied.**

18. Plaintiff is a citizen of the State of Missouri. Pet. ¶ 1.

19. Reynolds was at the time of Plaintiff's filing—and remains—a corporation organized under the laws of the State of North Carolina with its principal place of business in Winston-Salem, North Carolina. Pet. ¶ 2. Reynolds therefore is a North Carolina citizen. *See*,

5

*e.g.*, *Jet Midwest Int'l Co. v. Jet Midwest Grp., LLC*, 932 F.3d 1102, 1104 (8th Cir. 2019) ("For purposes of establishing diversity jurisdiction, 'a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business.'" (quoting 28 U.S.C. § 1332(c)(1))).

20. Schnucks is a Missouri company with its principal place of business in Missouri. *Id.* ¶ 7. But the Court should disregard Schnucks's citizenship for purposes of evaluating whether the parties are diverse *because Plaintiff has fraudulently joined Schnucks* in this action. Reynolds details the reasons that Schnucks is fraudulently joined in Section III.C, *infra*. In short, Schnucks is not liable under Missouri law because Plaintiff's claim against it is based "solely on [its] status as a seller in the stream of commerce" and the Manufacturer Defendant (Reynolds) is "properly before the [C]ourt" and is a defendant "from whom total recovery may be had for [P]laintiff's claim." Mo. Rev. Stat. §§ 537.762(1)-(2).

21. Alternatively, Plaintiff's claim against Schnucks is severable under Rule 21 of the Federal Rules of Civil Procedure, which provides an independent basis for diversity jurisdiction. *See infra* Section III.D.

22. Accordingly, there is complete diversity of citizenship, and removal to this Court is proper. *See* 28 U.S.C. §§ 1332(a), 1441(b).

    **C.**    **Plaintiff Has Fraudulently Joined Schnucks, and the Court Should Disregard It for Jurisdiction Purposes.**

23. Under well-settled Eighth Circuit precedent, joinder of a party is fraudulent and removal is proper when "there exists no reasonable basis in fact and law supporting a claim against the resident defendants." *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 871 (8th Cir. 2002) (citing *Anderson v. Home Ins. Co.*, 724 F.2d 82, 84 (8th Cir. 1983)).

24. In this case, Plaintiff asserts a single strict product liability claim against the non-

diverse Retailer Defendant, Schnucks, alleging that it sold Plaintiff unaltered and unmodified cigarettes manufactured by Reynolds that purportedly were "in an unreasonably dangerous defective condition when put to a reasonably anticipated use." Pet. ¶¶ 122-24 **(Ex. A)**.

25. However, under Missouri's "Innocent Seller" statute, a defendant whose liability is based solely on its status as a seller of products may be dismissed so long as another defendant is before the court from whom the plaintiff can fully recover:

1. ***A defendant whose liability is based solely on his status as a seller in the stream of commerce may be dismissed from a products liability claim*** as provided in this section.

2. This section ***shall apply to any products liability claim in which another defendant, including the manufacturer, is properly before the court and from whom total recovery may be had*** for plaintiff's claim.

Mo. Rev. Stat. §§ 537.762(1)-(2) (emphases added).

26. The Missouri Legislature defines a "products liability claim" as:

[A] claim or portion of a claim in which the plaintiff seeks relief in the form of damages on a theory that the defendant is strictly liable for such damages because:

(1) The defendant, wherever situated in the chain of commerce, transferred a product in the course of his business; and

(2) The product was used in a manner reasonably anticipated; and

(3) Either or both of the following:

(a) The product was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use, and the plaintiff was damaged as a direct result of such defective condition as existed when the product was sold; or

(b) The product was then unreasonably dangerous when put to a reasonably anticipated use without knowledge of its characteristics, and the plaintiff was damaged as a direct result of the product being sold without an adequate warning.

Mo. Rev. Stat. § 537.760.

27. The Missouri Supreme Court has recognized that by enacting the "Innocent Seller"

statute, the "legislature sought to protect 'innocent' wholesalers and retailers from the perils of products liability claims, both procedurally and substantively." *Gramex Corp. v. Green Supply*, 89 S.W.3d 432, 446 (Mo. 2002).

28. Here, Plaintiff has sued Schnucks solely as a seller in the chain of commerce, and because he may recover fully from Reynolds, who is properly before the Court, Schnucks is not liable under Missouri law. *Id*. at 445. Under the "Innocent Seller" statute, mere sellers in the stream of commerce like Schnucks are entitled to dismissal if "another defendant, including the manufacturer, is properly before the court" and "total recovery may be had for plaintiff's claim" from that defendant. Mo. Rev. Stat. § 537.762(2).

   a. As further explained in the Motion to Dismiss and accompanying Memorandum of Law filed by Schnucks, it was fraudulently joined because Plaintiff's sole basis for his strict liability claim against it is that it "***placed into the stream of commerce for sale***, including those that [Plaintiff] purchased and smoked, [cigarettes that] were in an unreasonably dangerous defective condition when put to a reasonably anticipated use." Pet. ¶ 124 (emphasis added) **(Ex. A)**. Plaintiff affirmatively pleads that Schnucks did not modify or alter the cigarettes from Reynolds and that Schnucks was solely a retailer in the stream of commerce:

      > ***There were no material alterations or modifications of cigarettes manufactured by RJR and B & W between the time of their manufacture and the time in which they were subsequently distributed to various retail outlets*** throughout the St. Louis area, including Schnucks, when they were sold through the stream of commerce, to, among others, Ford, who smoked them.

      *Id*. ¶ 123 (emphasis added). And Schnucks submitted with its Memorandum of Law the affidavit of its Corporate Counsel, Ryan Turnage, attesting that Schnucks "is aware of no facts or circumstances upon which a verdict might be reached

   against Schnucks, other than its status as a seller in the stream of commerce." *See* Mem. in Support of Schnucks's Motion to Dismiss at Ex. A (Aff. of Ryan Turnage, ¶ 9).

  b. Schnucks's Memorandum of Law also attaches the affidavit of Elizabeth Johnson, Senior Director of Finance for RAI Services Company, confirming that "total recovery may be had for plaintiff's claim" from Reynolds if he can prove his claims.[4]  This affidavit explains that for the most recent calendar year (2019), R.J. Reynolds Tobacco Company reported a Net Income of approximately $3,980,000,000 and total shareholder equity (net worth) of approximately $24,460,000,000.  *See* Mem. in Support of Defendant Schnucks's Motion to Dismiss at Ex. B (Aff. of Elizabeth Johnson).[5]

---

[4] "Courts may pierce the pleadings in order to determine the issue of fraudulent joinder." *Bauman v. Superliner Aviation, LLC*, No. 4:17-CV-02553-NCC, 2018 WL 339289, at *2 (E.D. Mo. Jan. 8, 2018); *see also*, *e.g.*, *In re Genetically Modified Rice Litigation*, 618 F. Supp. 2d 1047, 1052 (E.D. Mo. 2009) (analyzing evidentiary materials submitted by parties on fraudulent joinder); *Reef v. Wal-Mart Stores, Inc.*, 902 F. Supp. 185, 189 (E.D. Mo. 1995) (finding the resident defendant was fraudulently joined after considering the defendant's affidavit).  The affidavits of Mr. Turnage and Ms. Johnson are attached collectively to this Notice of Removal as **Exhibit B** and incorporated by reference.

[5] Reynolds recognizes that Judge Schelp recently remanded a case with similar facts, finding that Reynolds, the removing party, had provided "no evidence" that the plaintiff could fully recover if the retailer defendant in that case was dismissed pursuant to the Innocent Seller statute. *See Thompson v. R.J. Reynolds Tobacco Co.*, No. 4:20-cv-980 MTS, 2020 WL 5594072, at *2 (E.D. Mo. Sept. 18, 2020).  Given that the Innocent Seller statute "does not require elaborate financial inquiries," the Affidavit of Elizabeth Johnson—which was not in the record before the Eastern District in *Thompson*—is more than sufficient to satisfy the "total recovery" requirement. *Letz v. Turbomeca Engine Corp.*, No. 93-1058-CV-W-6, 1993 WL 469182 at *1 (E.D. Mo. Nov. 15, 1993).  Indeed, the undisputed size of Reynolds should be sufficient to satisfy the "total recovery" requirement. *See Spears v. Bayer Corp.*, No. 03-1151-CV-W-GAF, 2004 WL 7081940, at *3 (W.D. Mo. Mar. 29, 2004) ("The Court further notes that, ***given the size*** of [manufacturer defendant] Bayer, Spears would be able to obtain full recovery from it and not need to rely on contribution from [seller defendant] Cosentino." (emphasis added) (citation omitted)); *cf. Malone v. Shaun, Inc.*, 965 S.W.2d 177, 182 (Mo. App. E.D. 1997) (dismissal under "Innocent Seller" statute "should not be granted where the product manufacturer is not subject to process under

9

29. Accordingly, because "there exists no reasonable basis in fact and law supporting a claim against" Schnucks, "[j]oinder is fraudulent and removal is proper." *Wiles*, 280 F.3d at 871.

30. In *Graham v. Mentor World Wide LLC*, Judge Hamilton denied the plaintiff's motion to remand because she found the non-diverse retailer was fraudulently joined based on the "Innocent Seller" statute:

> Section 537.762.2 states that the "section shall apply to any products liability claim in which another defendant, including the manufacturer, is properly before the court and from whom total recovery may be had for plaintiff's claim." § 537.762.2. ***Plaintiff has brought a claim against the alleged manufacturer. Plaintiff, therefore, has not stated any colorable claim for strict liability against Defendant St. Louis Cosmetic Surgery Inc. [the retailer], and therefore the Defendant has been fraudulently joined.***

No. 4:19-cv-01637, 2019 WL 3253185, at *3 (E.D. Mo. July 19, 2019) (emphasis added)).

31. In an analogous case, Judge Wright of the Western District concluded that the plaintiff fraudulently joined two retailers who sold cigarettes manufactured by another defendant because: (1) the retailers "[we]re not subject to suit under the Innocent Seller statute"; (2) the retailers were merely "seller[s] in the stream of commerce of the allegedly defective product"; and (3) the "plaintiff would be able to make a full recovery from the product manufacturers without contribution from the [retailers]." *Thomas v. Brown & Williamson Tobacco Corp.*, No. 06-0223-CV-W-SOW, 2006 WL 1194873, at *3 (W.D. Mo. Apr. 28, 2006).  The facts of this case are analogous and this Court should likewise conclude that Schnucks has been fraudulently joined.

32. Multiple other federal courts in Missouri have concluded that non-diverse retailers were fraudulently joined under the "Innocent Seller" statute in an effort to defeat diversity jurisdiction, including:

---

Missouri law ***or is insolvent***") (emphasis added); *Davis v. Dunham's Athleisure Corp.*, 362 F. Supp. 3d 651, 658-59 (E.D. Mo. 2019) (citing *Malone* for same point).

- A local retailer selling cold medicine in a case where the plaintiff sued both the manufacturer and the retailer, alleging that the cold medicine contained an ingredient that caused his stroke. *Spears v. Bayer Corp.*, No. 03-1151-CV-W-GAF, 2004 WL 7081940, at *1 (W.D. Mo. Mar. 29, 2004). Judge Fenner found that the local retailer was fraudulently joined because the plaintiff's allegations against it were based solely on its status "as a seller of the product," and the manufacturer of the cold medicine was "a proper party before the Court who could be liable . . . for complete recovery." *Id.* at *3. The Court further concluded that given the size of the manufacturer, the plaintiff "would be able to obtain full recovery from it and not need to rely on contribution from" the local retailer. *Id.*

- A national retailer selling tampons in a case in which the plaintiff sued both a manufacturer and two retailers alleging that she developed toxic shock syndrome as a result of using the product. *Wichmann v. Proctor & Gamble Mfg. Co.*, No. 4:06CV1457 HEA, 2006 WL 3626904, at *1 (E.D. Mo. Dec. 11, 2006); and

- A hospital providing the "cottonoids" used in certain surgical procedures. *Kampelman v. Codman & Shurteef, Inc.*, No. 4:09CV1039 HEA, 2009 WL 2382775, at *1 (E.D. Mo. July 31, 2009). The plaintiffs alleged that the Missouri resident defendant was strictly liable for using the cottonoids during their surgical procedures, where part of the cottonoid separated and remained stuck in the body, causing nerve damage and other injuries. Judge Autrey found that "[t]here [we]re no facts or circumstances alleged upon which a verdict might be rendered against [the hospital] in this case under a products liability theory, other than as an alleged seller in the stream of commerce." *Id.* at *5.[6]

33. This Court should reach the same result. Plaintiff does not claim that Schnucks designed or manufactured cigarettes or committed any other wrongful acts. *See, e.g.*, Pet. ¶¶ 123-25 **(Ex. A)**. Rather, Plaintiff faults Schnucks simply for being "in the business of selling products for use or consumption, including cigarette products manufactured by RJR and B&W that [Plaintiff] smoked." *Id*. ¶ 122.

---

[6] Reynolds acknowledges that some Missouri federal courts have reached to a different result when applying a prior version of the "Innocent Seller" statute. *See*, *e.g.*, *Fahy v. Taser Int'l, Inc.*, No. 4:10CV19 CDP, 2010 WL 559249, at *1-2 (E.D. Mo. Feb. 10, 2010) (disagreeing that the non-diverse retailer was fraudulently joined based on now-repealed provision of the "Innocent Seller" statute); *Baron v. Ford Motor Co.*, No. 11-1149-CV-W-DGK, 2012 WL 1898780, at *2-5 (W.D. Mo. May 23, 2012) (same). These cases, however, are distinguishable because the rationale underpinning them is no longer applicable following the Missouri Legislature's amendment of the "Innocent Seller" statute in August 2019.

11

34. Thus, it is clear that Plaintiff's claim against Schnucks arises solely from the fact that this retailer, like thousands of others throughout the United States, sells Reynolds's cigarettes, including Winston, Kool, and Salem—the only cigarettes at issue in this case. *See*, *e.g.*, *Thomas*, 2006 WL 1194873, at *3-4 (finding local sellers of cigarettes were protected by the "Innocent Seller" statute and were fraudulently joined).

35. In sum, Plaintiff fraudulently joined Schnucks in an attempt to deprive this Court of diversity jurisdiction. The Court should therefore disregard Schnucks's citizenship and find that diversity of citizenship exists. *See*, *e.g.*, *In re Genetically Modified Rice Litig.*, 618 F. Supp. 2d 1047, 1052 (E.D. Mo. 2009) (disregarding the citizenship of a fraudulently-joined non-diverse defendant, finding diversity of citizenship in the remaining parties, and denying motion to remand).

**D. Alternatively, Schnucks is a Dispensable and Severable Party under Federal Rules of Civil Procedure 19 and 21.**

36. Alternatively, the Court should sever Plaintiff's claim against Schnucks because this non-diverse retailer is a dispensable party whose sole purpose in the case is to destroy diversity jurisdiction. Severing Plaintiff's claim against Schnucks provides the Court with an independent basis for diversity jurisdiction.

37. Under Federal Rule of Civil Procedure 21, district courts may retain jurisdiction by severing the claims against a non-diverse defendant. *See, e.g.*, *Fetzer v. Cities Serv. Oil Co.*, 572 F.2d 1250, 1253 n.4 (8th Cir. 1978) ("Rule 21 of the Federal Rules of Civil Procedure may be invoked to retain subject matter jurisdiction by dropping a non-diverse party who is not indispensable, at any stage of the action.").

38. "Rule 21 provides that the court 'may . . . sever any claim against a party.'" *Shoop v. Forquer*, No. 2:19-CV-45 SPM, 2019 WL 3777827, at *6 (E.D. Mo. Aug. 12, 2019) (ellipsis in

original) (quoting Fed. R. Civ. P. 21). Under this rule, federal courts may dismiss "dispensable, diversity-destroying parties." *Lee v. Airgas - Mid S., Inc.*, 793 F.3d 894, 898 (8th Cir. 2015) (citing *Buckley v. Control Data Corp.*, 923 F.2d 96, 97-98 (8th Cir. 1991)); *see also Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832-33 (1989) (concluding that courts have the power to dismiss a dispensable non-diverse party whose presence spoils diversity jurisdiction); *Payroll Mgmt., Inc. v. Lexington Ins. Co.*, 815 F.3d 1293, 1298 n.8 (11th Cir. 2016) (recognizing that Rule 21 permits district courts to drop dispensable non-diverse parties "when necessary to establish federal subject-matter jurisdiction"). In other words, Rule 21 "grant[s] . . . discretionary power to the federal court to perfect its diversity jurisdiction" by dropping dispensable parties. *Kirkland v. Legion Ins. Co.*, 343 F.3d 1135, 1142 (9th Cir. 2003) (internal quotation marks omitted).

39. Courts in this district have severed dispensable parties and retained jurisdiction over removed cases. For instance, in *Rolfe v. Biomet, Inc.*, the plaintiffs sued two diverse medical device manufacturer defendants for product liability claims; they also asserted claims against a non-diverse hospital and a doctor for medical malpractice. No. 4:14CV00738 AGF, 2014 WL 3420814, at *1 (E.D. Mo. July 14, 2014). Judge Fleissig severed and remanded the non-diverse medical malpractice defendants because they were not indispensable in a product liability suit and retained the diverse product liability claims against the diverse medical device manufacturing defendants. *Id.* at *3-5. Other courts also have reached the same result. *See, e.g., Graham*, 2019 WL 3253185, at *5 ("In the present case, Defendant has met its burden to persuade the Court that Plaintiff's claim against Defendant Haley is not logically related to Plaintiff's products liability claim and has been improperly joined. The Court will therefore, sever Plaintiff's claim against Defendant Haley and remand it to the Circuit Court for St. Louis County."); *Brooks v. Kelly*, No. 4:11CV01510 AGF, 2011 WL 6009657, at *2 (E.D. Mo. Dec. 1, 2011) ("[W]hen the potential

defendant is deemed dispensable . . . the district court [may] deny joinder and retain jurisdiction over the action.").

40. To determine whether it should sever the claims against a non-diverse defendant, the Court must determine whether the party is "dispensable" under Federal Rule of Civil Procedure 19(b). *See, e.g.*, *Quaker Oats Co. v. Coperion Corp.*, No. C-05-153-LRR, 2006 WL 8456805, at *4-5 (N.D. Iowa Apr. 4, 2006) (citing *Newman-Green*, 490 U.S. at 838). "The determination of whether or not a person is an indispensable party is one which must be made on a case-by-case basis and is dependent upon the facts and circumstances of each case." *Bailey v. Bayer CropScience L.P.*, 563 F.3d 302, 308 (8th Cir. 2009) (citation omitted).

41. Rule 19 requires the Court to consider four factors in evaluating whether a party is dispensable:

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2) the extent to which any prejudice could be lessened or avoided by:
   (A) protective provisions in the judgment;
   (B) shaping the relief; or
   (C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

42. Here, Plaintiff would not suffer *any* prejudice from severing Schnucks because, as noted above, if Plaintiff proves liability he can recover fully from Reynolds. Applying the factors articulated in Rule 19(b), it is clear that Schnucks is a dispensable party.

43. Accordingly, the Court should sever Plaintiff's claims against Schnucks under Rule 21. *See, e.g.*, *Bailey*, 563 F.3d at 308-09 (affirming the district court's severance of the non-diverse

14

party and retaining diversity jurisdiction under Rule 21).

### IV.     CONSENT TO REMOVAL

44.     Reynolds removes this case.  *See*, *e.g.*, *Williams v. City of Beverly Hills*, No. 4:07-CV-661 CAS, 2007 WL 2792490, at *2 (E.D. Mo. Sep. 24, 2007) ("In general, all defendants must join in the notice of removal." (citation omitted)).

45.     Schnucks was fraudulently joined and its consent therefore is not required.  *See* 28 U.S.C. § 1446(b)(2)(A) ("[A]ll defendants who have been *properly joined* and served must join in or consent to the removal of the action." (emphasis added)); *see also Couzens v. Donohue*, 854 F.3d 508, 513 (8th Cir. 2017) ("We also agree with the district court's conclusion that because McLiney and O'Laughlin were fraudulently joined, their consent was not needed for removal." (citation omitted)); *Bradley Timberland Res. v. Bradley Lumber Co.*, 712 F.3d 401, 404-05 (8th Cir. 2013) (same); *Roberts v. Palmer*, 354 F. Supp. 2d 1041, 1046 (E.D. Mo. 2005) (same). Nevertheless, Schnucks consents to removal, and its consent is attached as **Exhibit C**.

### V.      VENUE IS PROPER

46.     Venue is proper in this Court because this action was filed in the 22nd Judicial Circuit Court for the City of St. Louis, Missouri, a court encompassed by the Eastern District of Missouri, Eastern Division.  *See* 28 U.S.C. § 1441(a); 28 U.S.C. § 105(a)(1).

### VI.     NOTICE OF REMOVAL TO PLAINTIFF AND STATE COURT AND COPIES OF ALL PLEADINGS

47.     Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, orders, and other documents on file in the state court are attached as **Exhibit D**.

48.     Pursuant to 28 U.S.C. § 1446(d), a written notice of the filing of the Notice of Removal will be served promptly on Plaintiff's counsel.  Reynolds also will promptly file a copy with the Clerk of the 22nd Judicial Circuit Court for the City of St. Louis, Missouri.

49. Pursuant to Federal Rule of Civil Procedure 7.1 and Local Rules 2.02 and 2.09, Reynolds has contemporaneously filed its Certificate of Interest.

50. The Original Filing Form (Designation Sheet) is attached as **Exhibit E**, and the Civil Cover Sheet is attached as **Exhibit F**.

### VII.   RESERVATION OF RIGHTS

51. Reynolds reserves the right to amend or supplement this Notice of Removal and further reserves all rights and defenses, including those under Federal Rule of Civil Procedure 12. Nothing in this Notice of Removal should be construed to waive or relinquish any right to assert any defense or affirmative matter.

### VIII.   DEMAND FOR JURY TRIAL

52. Pursuant to Federal Rule of Civil Procedure 38 and Local Rule 2.04, R.J. Reynolds Tobacco Company demands a jury trial as to all claims triable in this action.

### IX.   CONCLUSION

R.J. Reynolds Tobacco Company hereby gives notice that it removes the matter styled as *Eugene Ford v. R.J. Reynolds Tobacco Company., et al.*, No. 2022-CC09874, from the 22nd Judicial Circuit Court for the City of St. Louis, Missouri, to the United States District Court for the Eastern District of Missouri, Eastern Division.

Dated:  October 29, 2020

Respectfully submitted,

THOMPSON COBURN LLP


By:  /s/ Carl Rowley
Carl L. Rowley,
Bar No. 33854MO
Kevin C. McGinley
Bar No. 58220MO
One US Bank Plaza
St. Louis, MO 63101
Telephone: (314) 552-6000
Facsimile: (314) 552-7000 fax
kmcginley@thompsoncoburn.com
crowley@thompsoncoburn.com

***Attorneys for R.J. Reynolds Tobacco Company***

**CERTIFICATE OF SERVICE**

I hereby certify that on October 29, 2020, a true and correct copy of the foregoing document was served upon the following via the Court's CM/ECF system, for service through operation of the Court's electronic system upon all counsel of record. I further certify that the foregoing document was served by electronic mail, based on the parties' agreement.

    Allan B. Kaiser
    TEIN MALONE, PLLC
    3480 Main Highway
    Coconut Grove, FL 33133
    akaiser@teinmalone.com

    *Attorney for Plaintiff*


                        /s/ Carl L. Rowley
                        *Attorney for R.J. Reynolds Tobacco Company*