# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| EUGENE FORD ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 4:20CV1551 HEA |
| ) | |
| R.J. REYNOLDS TOBACCO CO., ) | |
| & SCHNUCK MARKETS, INC. ) | |
| ) | |
| Defendants. ) | |

## OPIINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant R.J. Reynolds Tobacco Co.'s, motion to dismiss Counts I, II, III, & IV pursuant to Fed. R. Civ. P. 12(b)(6) or in the alternative a more definite statement under Fed. R. Civ. P. 12(e), [Doc. No. 12]. Plaintiff brings claims for strict products liability, (design defect)(Count I), negligent design, (Count II), fraudulent concealment, (Count III), and concealment fraud conspiracy, (Count IV), and strict liability, (Count V). For the reasons set forth below, the motion will be granted in part and denied in part.

## Facts and Background

Plaintiff initially filed a Petition in the 22nd Judicial Circuit Court of the City of St. Louis, Missouri on September 19, 2020, alleging that he developed lung cancer as the result of smoking cigarettes manufactured by Defendant R.J. Reynolds and sold by Defendant Schnuck Markets. Plaintiff brought claims for

1

strict products liability, negligent design, fraudulent concealment, and concealment fraud conspiracy against Defendant R.J. Reynolds, (RJR). Plaintiff brought a single claim for strict products liability against Defendant Schnuck Markets.

Defendant R.J. Reynolds removed the case to this Court on October 29, 2020, invoking the Court's diversity jurisdiction under 28 U.S.C. § 1332. Although Schnuck Markets is a resident of Missouri, R.J. Reynolds argued that complete diversity still existed because Schnuck Markets was fraudulently joined. The Court denied Plaintiff's motion to remand and dismissed Schnuck Markets as a defendant on January 27, 2021.

Plaintiff began smoking cigarettes in the early 1970's when he was around age of fifteen. Initially he only smoked intermittently, limited Winston cigarettes that he "confiscated" from his father. After about a year of smoking sporadically, Plaintiff was able to buy his own cigarettes. He switched brands to Kool menthol cigarettes at 16. Plaintiff continued to smoke for almost 50 years, smoking Winston, Kool and Salem cigarettes.

Throughout his years of smoking, Plaintiff has seen and heard public statements made by the cigarette industry, including RJR, Brown and Williamson, and the Tobacco Institute, denying that smoking causes cancer and other rare diseases. They made these statements despite the fact that cigarettes contain potentially dangerous ingredients. Additionally, throughout his years of smoking,

Plaintiff saw advertisements that promoted cigarettes as "cool" and used misleading euphemisms. Plaintiff does not claim that the cigarettes he purchased did not contain the federally mandated warning, but rather alleges that the public statements and advertisements made by the cigarette industry caused confusion and ultimately lead him to believe that cigarettes were not yet proven to cause cancer or other serious illnesses.

## Standard for Review

The purpose of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is to test the legal sufficiency of the complaint. When considering a Rule 12(b)(6) motion, the Court must assume the factual allegations of the complaint to be true and construe them in favor of the plaintiff. *Neitzke v. Williams*, 490 U.S. 319, 326–27, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989). The Court is not bound to accept as true a legal conclusion couched as a factual allegation. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a Rule 12(b)(6) motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Twombly*, 550 U.S. at 570). Although "specific facts are not necessary," the plaintiff must allege facts sufficient to "give fair notice of what the ... claim is and the grounds upon which it

rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly,* 550 U.S. 544, 555 (2007)).

A plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Id.* at 562. This standard "simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." *Id*. at 556. The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of [her] claim." *Twombly,* 550 U.S. at 556.

## Discussion

Defendant argues that Plaintiff's claims should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6). First Defendant argues that Plaintiff's design defect claims are impliedly preempted or in the alternative fail to state a claim because they do not identify a specific design defect, but rather rely on the fact that all cigarettes are harmful. Second, Defendant argues that Plaintiff's fraud claims must be dismissed because they are merely refashioned failure to warn claims which are preempted by the Federal Cigarette Labelling and Advertising Act.

4

Counts I and II-Design Defect and Negligent Design

*Preemption*

In Count I and II, Plaintiff alleges that the cigarettes designed and manufactured by Defendant and its predecessors in interest were in an unreasonably dangerous and defective condition to users. Plaintiff specifically alleges that the use of flue-cured tobacco and manipulation of the amount of nicotine in the cigarettes were design choices that rendered the cigarettes unreasonably dangerous. Defendant, relying on *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120 (2000), argues that these claims are preempted because the United States Supreme Court has recognized that cigarettes are a legal product and a "ban on tobacco products would plainly contradict congressional policy." *Brown & Williamson*, 529 U.S. at 139. Plaintiff challenges Defendant's characterization of his claim, arguing that his claim attacks specific design choices rather than cigarettes more generally and therefore would not result in a functional ban of cigarettes as contemplated in *Brown & Williamson*. Plaintiff also argues that regardless of the characterization of the claims, they are not preempted.  He relies in part on *Graham v. R.J. Reynolds Tobacco Co.*, 857 F.3d 1169, 1190 (11th Cir. 2017), which emphasized that *Brown & Williamson* did not address the states' power to regulate tobacco or preemption.

5

Chief Judge Sippel recently addressed this very issue in *Andrews v. R.J. Reynolds Tobacco* Company, Cause Number: 4:20CV1583 RWS (E.D. Mo. August 6, 2021) Judge Sippel found Plaintiff's design defect claims are not preempted.

> The issue in *Brown & Williamson*, was whether the Food and Drug Administration had authority under the Food, Drug, and Cosmetic Act, to regulate tobacco products. *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 120 S. Ct. 1291, 146 L. Ed. 2d 121 (2000). The Supreme Court analyzed the history of tobacco legislation and the implications of FDA regulation and concluded that regulation by the FDA would require it to ban the sale of tobacco, which would contradict congressional intent to allow their sale but inform consumers of the risk. *Brown & Williamson*, 529 U.S. at 137. The Court did not address whether states could ban tobacco and did not consider the issue of state sovereignty. Since *Brown & Williamson* was decided in 2000, some courts have determined that design defect claims that would result in functional bans on tobacco products are preempted based on the Supreme Court's interpretation of congressional intent in *Brown & Williamson*. But others have not. In 2009, the Ninth Circuit indicated in dicta that such preemption is unwarranted. The Ninth Circuit stated in *Hunter v. Phillip Morris USA* that the plaintiff's product liability claim did not "present an obstacle to the congressional policy concerning the regulation of tobacco." *Hunter v. Philip Morris USA,* 582 F.3d 1039, 1048 (9th Cir. 2009). The Ninth Circuit noted that since the Supreme Court issued its decision in *Brown & Williamson*, Congress had repealed the provision of the Agricultural Adjustment Act of 1938 that had articulated a federal policy in support of the sale of tobacco. *Id.* In 2017, the Eleventh Circuit, in an en banc decision, "conclude[d] that federal tobacco laws do not preempt state tort claims based on the dangerousness of all the cigarettes manufactured by the tobacco companies." *Graham v. R.J. Reynolds Tobacco Company*, 857 F.3d 1169, 1186 (11th Cir. 2017) *cert. denied*, 138 S. Ct. 646 (2018). In its decision the Eleventh Circuit noted that a state "may employ its police power to regulate cigarette sales and to impose tort liability on cigarette manufacturers" unless there is a "clear and manifest purpose of Congress" to supersede such "historic police power." *Graham*, 857 F.3d at 1191. It also examined laws related to tobacco regulation and determined that there was no indication that "Congress

6

created a regulatory scheme that does not tolerate tort liability based on the dangerousness of all cigarettes manufactured by the tobacco companies but tolerates tort actions based on theories with a more limited scope. *Id.* at 1188.

This Court agrees with Chief Judge Sippel that the reasoning in *Graham* is persuasive. When considering preemptions, Courts begin "with the assumption that the historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Altria Grp., Inc. v. Good*, 555 U.S. 70, 77 (2008). Here, the Defendant asks the Court to find that state law is impliedly preempted because it conflicts with Congress's clear policy in favor of the sale of cigarettes. But in 2004, Congress repealed the provision of the Agricultural Adjustment Act of 1938 that had articulated federal policy in support of the marketing of tobacco. *See* AMERICAN JOBS CREATION ACT OF 2004, PL 108–357, October 22, 2004, 118 Stat 1418, Title VI Fair and Equitable Tobacco Reform, § 611(a). As discussed in detail in *Graham,* the statement of purpose in the Labeling Act, 15 U.S.C. § 1331, does not reflect a federal objective to preserve cigarette sales. *Graham*, 857 F.3d at 1187–88. Additionally, the enforcement of state products liability laws does not create an obstacle to the accomplishment and execution of the purposes and objectives of Congress. *Graham*, 857 F.3d at1187-88.

Additionally, even if the logic in *Brown & Williamson* applied, the Plaintiff's design defect claim would not result in a functional ban on cigarettes.

7

Defendant argues that the Plaintiff's claim based on flue-cured tobacco, nicotine manipulation, and the addition of flavors apply to all cigarettes, but the Plaintiff is challenging specific design choices regarding flavor additions and nicotine levels. *See McCracken v. R.J. Reynolds Tobacco Co.*, No. CV 17-4495, 2018 WL 2304041, at *5–6 (E.D. Pa. May 21, 2018); *Bougopoulos v. Altria Grp., Inc.*, 954 F. Supp. 2d 54, 61 (D.N.H. 2013). Moreover, for Plaintiff's design defect claim to succeed, Plaintiff must also establish causation. Therefore, "[s]tate common law only affords a remedy to individuals who can establish that tobacco products rather than their own negligence or disregard of the inherent risks of tobacco caused them to suffer injuries." *Richardson v. R.J. Reynolds Tobacco Co.,* 578 F. Supp. 2d 1073, 1078 (E.D. Wis. 2008).

Federal law does not impliedly preempt Plaintiff's claims.

*Failure to State a Design Defect Claim Under Missouri Law*

Plaintiff states a claim for strict products liability under Missouri Law. Defendant argues Plaintiff fails to state a claim for a design defect under both the strict products liability and negligent design theories because he did not plead a specific design flaw or causation and because he failed to meet the basic pleading standards under Fed. R. Civ. P. 8. As discussed earlier, Plaintiff specifically alleged design defects based on nicotine manipulation and the use of additive flavors to make the cigarettes more addictive and easier to smoke.

8

Under Missouri law, "[a] manufacturer is liable under a strict liability product defect claim "if the product was in an unreasonably dangerous defective condition when put to a reasonably anticipated use, and the plaintiff was damaged as a direct result of such defective condition as existed when the product was sold." *Smith v. Brown & Williamson Tobacco Corp.*, 275 S.W.3d 748, 791 (Mo. Ct. App. 2008) (quoting *Richcreek v. Gen. Motors Corp.*, 908 S.W.2d 772, 775 (Mo. Ct. App. 1995); § 537.760. To prove a claim of strict products liability for defective design, a plaintiff must prove that "(1) the defendant sold a product in the course of its business; (2) the product was then in a defective condition, unreasonably dangerous when put to a reasonably anticipated use; (3) the product was used in a manner reasonably anticipated; and (4) plaintiff was damaged as a direct result of the defective condition that existed when the product was sold." *Engel v. Corrigan Co.-Mech. Contractors, Inc., a Div. of Corrigan Bros., Inc.*, 148 S.W.3d 28, 30 (Mo. Ct. App. 2004) (citation omitted). "The core concern in strict tort liability law is safety. Therefore, the primary inquiry in a design defect case is whether the product—because of the way it is designed—creates an unreasonable risk of danger to the consumer or user when put to normal use." *Nesselrode v. Exec. Beechcraft, Inc.*, 707 S.W.2d 371, 375 (Mo. 1986) (internal citations removed). In Missouri, "the concept of unreasonable danger, which is determinative of whether

a product is defective in a design case, is presented to the jury as an ultimate issue without further definition." *Id.*

Plaintiff alleges that Defendant manipulated the amount of nicotine and used added flavors to make the cigarettes more addictive and easier to inhale. This is sufficient at this stage to state a claim for design defect. Defendant's motion as to Counts I and II will be denied.

**Counts III and IV**

In Count III, Plaintiff alleges Defendant fraudulently concealed information that Defendant had a duty to disclose. In Count IV, Plaintiff alleges Defendant conspired with other cigarette manufacturers and the Tobacco Institute and Counsel for Tobacco Research to conceal material information from consumers. Defendant argues that Plaintiff's fraud claims are repackaged failure to warn claims and are therefore preempted by the Federal Cigarette Labeling and Advertising Act. Defendant also argues that it did not have a duty to disclose, Plaintiff's fraud claims are time-barred, and fail to meet the heightened pleading standard under Fed. R. Civ. P. 9(b). Plaintiff argues that his claims are not based on a "duty 'based on smoking and health,'" but on a duty not to deceive or commit fraud and therefore are not preempted. He also argues that his claim satisfies Fed. R. Civ. P. 9(b).

*Preemption*

Plaintiff's claims for fraudulent concealment and fraud concealment conspiracy are partially preempted. The Federal Cigarette Labeling and Advertising Act preempts state law claims "based on smoking and health … with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this Act." Pub.L. 91–222, 84 Stat. 87, as amended, 15 U.S.C. § 1331-1340. Based on this statute, in *Cipollone v. Liggett Group, Inc.*, the Supreme Court held that fraudulent concealment claims are preempted by the Federal Cigarette Labelling and Advertising Act, but only to the extent that they do not rely on a duty to disclose facts through channels other than advertising or promotion. *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 527–29, 112 S. Ct. 2608, 120 L. Ed. 2d 407 (1992). Accordingly, the Plaintiff's claim regarding fraudulent concealment is partially preempted. It is preempted to the extent it alleges Defendant has a duty to disclose information regarding the health and safety of cigarettes via advertising or promotion.

*Statute of Limitations*

Defendant next argues that Plaintiff's fraud claims are barred by the statute of limitations. "Missouri Revised Statute § 516.120(5) sets a five-year statute of limitations on claims based on fraud. Subsection (5) further provides that a cause of action based on fraud shall be "deemed not to have accrued until the discovery by the aggrieved party, at any time within ten years, of the facts constituting the

11

fraud." *Wallace v. R.J. Reynolds Tobacco Co.*, No. 09-01011-CV-W-REL, 2011 WL 13290652, at *1 (W.D. Mo. Sept. 27, 2011); Mo. Rev. Stat. § 516.120(5). "Missouri courts have consistently interpreted this section to limit the statute of limitations for fraud to a fifteen year maximum." *Id*. (collecting cases). Defendant argues that the fraud claims are time-barred because they do not allege any fraudulent conduct taking place after September 19, 2005, 15 years prior to the filing date. Plaintiff counters by arguing that the alleged the fraud is ongoing.

Plaintiff's fraudulent concealment claim is time-barred because he does not allege any fraudulent acts occurring after September 19, 2005. Plaintiff details the history of the tobacco industry's position regarding the health of the cigarettes, but he does not allege any specific concealment or fraudulent statements that occurred from 2005-2020. *See Wallace v. R.J. Reynolds Tobacco Co.*, No. 09-01011-CV-W-REL, 2011 WL 13290652, at *1 (W.D. Mo. Sept. 27, 2011). But his concealment fraud conspiracy claim is not time barred. The Eighth Circuit and Missouri courts have held that conspiracy claims are not subject to the ten-year discovery period like fraud claims. Rather they are governed by Mo. Rev. Stat. §516.120. *Carr v. Aubuchon,* 969 F.2d 714, 716 (8th Cir. 1992); *May v. AC&S, Inc.*, 812 F. Supp. 934, 943 (E.D. Mo. 1993); *Steinhilber v. Thompson*, No. 90-0377-CV-W-9, 1991 WL 219393 at *4 (W.D. Mo. 1991); *Kansas City v. W.R. Grace & Co.,* 778 S.W.2d 264, 273 (Mo. App. 1989). The limitation period in conspiracy cases

12

begins to run upon the "occurrence of the last overt act charged resulting in damage to the plaintiff." *Kansas City v. W.R. Grace & Co.*, 778 S.W.2d 264, 273 (Mo. App. 1989). A key element of the limitations period is damages. *Rippe v. Sutter*, 292 S.W.2d. 86, 90-91 (Mo. 1956). Thus, when the act giving rise to the cause of action does not cause damages immediately, the period of limitations will date from when the resulting damage is sustained and capable of ascertainment. *See Kansas City v. W.R. Grace & Co.*, 778 S.W.2d 264, 273 (Mo. App. 1989). Since Plaintiff was not diagnosed with cancer until 2019, the limitations period has not run.

*Federal Rule of Civil Procedure 9(b)*

Plaintiff fails to meet the pleading standards required by Fed. R. Civ. P. 9(b). In order to prevail on his fraudulent concealment claims, Plaintiff must establish silence or concealment of facts that amounted to actual fraud and "a legal duty to disclose on the part of the fraud-feasor arising from a relation of trust, from confidence, inequality of condition, or superior knowledge which is not within the fair and reasonable reach of the other party." *Mash v. Brown & Williamson Tobacco Corp.,* No. 4:03CV0485 TCM, 2004 WL 3316246, at *11 (E.D. Mo. Aug. 26, 2004) (citing *VanBooven v. Smull*, 938 S.W.2d 324, 328 (Mo. Ct. App. 1997)). "A plaintiff seeking to recover for fraudulent concealment must show all of the following: (1) the fact was not within the fair and reasonable reach of the plaintiff;

13

(2) the plaintiff was unable to discover the concealed information; and (3) plaintiff exercised reasonable diligence." *Littlefield v. Edmonds*, 172 S.W.3d 903, 907 (Mo. Ct. App. 2005) (citing *Keefhaver v. Kimbrell*, 58 S.W.3d 54, 60 (Mo. Ct. App. 2001)). Additionally, Plaintiff's complaint must meet the requirements of Fed. R. Civ. P. 9(b), which mandates a heightened pleading standard for fraud-based claims. *See Drobnak v. Andersen Corp.*, 561 F.3d 778, 783–84 (8th Cir. 2009). To satisfy Fed. R. Civ. P. 9(b)'s requirements the complaint "must allege 'such matters as the time, place, and contents of false representations, as well as the identity of the person making the misrepresentations and what was obtained or given up thereby.'" *Id*. "Conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Id.* "To determine whether a party has satisfied Rule 9(b), courts look to 'the complexity or simplicity of the transaction or occurrence, the relationship of the parties and the determination of how much circumstantial detail is necessary to give notice to the adverse party and enable him to prepare a responsive pleading." *Corval Constructors, Inc. v. Tesoro Ref. & Mktg. Co., LLC*, No. 19CV01277ECTBRT, 2019 WL 5260483, at *7 (D. Minn. Oct. 17, 2019) (quoting *Payne v. United States*, 247 F.2d 481, 486 (8th Cir. 1957)).

To the extent the Plaintiff's fraud claims are not preempted, they fail to satisfy the heightened pleading standards of Fed. R. Civ. P. 9(b). Although Plaintiff

provides a few specific statements made by tobacco companies and the Tobacco Institute, most of the allegations made by Plaintiff do not allege specific fraudulent statements. Plaintiff's Petition also fails to adequately allege that the concealed facts were not within his fair and reasonable reach, that he was unable to discover the concealed information, or that he exercised reasonable diligence. Although Plaintiff states generally that he has heard, seen, and read about the public pronouncements made by cigarette companies and the Tobacco Institute, he fails to indicate when, where or how he heard or saw the statements that allegedly concealed material information. *See In re Gen. Motors Corp. Anti-Lock Brake Prod. Liab. Litig.*, 966 F. Supp. 1525 (E.D. Mo. 1997), *aff'd sub nom. Briehl v. Gen. Motors Corp.*, 172 F.3d 623 (8th Cir. 1999); *See also Wallace v. R.J. Reynolds Tobacco Co.*, No. 09-01011-CV-W-REL, 2010 WL 11579047, at *3 (W.D. Mo. Aug. 12, 2010); *Littlefield*, 172 S.W.3d at 907; *In re EpiPen Direct Purchaser Litig.*, No. 20-CV-0827 (ECT/TNL), 2021 WL 147166, at *7 (D. Minn. Jan. 15, 2021); *Whittington v. Nordam Grp. Inc.*, 429 F.3d 986, 996 (10th Cir. 2005).

Since Plaintiff failed to plead the fraud claims with the particularity required under Fed. R. Civ. P. 9(b), both the fraudulent concealment claim and the concealment fraud conspiracy claims will be dismissed.

PUNITIVE DAMAGES

Plaintiff concedes that his claim for punitive damages is premature under Mo. Rev. Stat. § 510.261. Thus, the claim for punitive damages will be stricken.

## CONCLUSION

For the reasons discussed above, Defendant's motion to dismiss as to the Plaintiff's strict products liability claim and negligent design claim (Counts I and II), will be denied.  The Motion will be granted as to Plaintiff's fraudulent concealment claim and concealment fraud conspiracy claim (Counts III & IV).

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's motion to dismiss, [Doc. No. 12] is **DENIED** as to Counts I and II.

**IT IS FURTHER ORDERED** that Motion is **GRANTED** as to Counts III and IV.

**IT IS FURTHER ORDERED** that Counts III and IV are dismissed.

**IT IS FURTHER ORDERED** that Plaintiff's claim for punitive damages is stricken.

Dated this 11th day of August 2021.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE